UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RACHELLE BAKER and<br>JASON DITTMANN, individually<br>and on behalf of all others similarly<br>situated,<br><br>        Plaintiff.<br><br>v.<br><br>EQUITY RESIDENTIAL<br>MANAGEMENT, L.L.C. and<br>EQR-WALDEN PARK, L.L.C.,<br><br>        Defendants. | Civil Action No. 13-12217<br><br>Middlesex Superior Court Civil Action No. 2013-03630<br><br><br>NOTICE OF REMOVAL UNDER<br>28 U.S.C. §§ 1332, 1441, 1446, and 1453 |

## SECOND NOTICE OF REMOVAL FROM STATE COURT

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, defendants Equity Residential Management, L.L.C. and EQR-Walden Park, L.L.C. hereby give notice of a second removal of Civil Action No. 2013-03630 from the Superior Court Department for Middlesex County, Massachusetts, to the United States District Court for the District of Massachusetts. In support of this notice, defendants state as follows:

**A.    BACKGROUND**

1. On or about August 15, 2013, plaintiffs Rachelle Baker and Jason Dittman commenced a putative class action, entitled *Rachelle Baker and Jason Dittmann v. Equity Residential Management, L.L.C. and EQR-Walden Park, L.L.C.*, Civil Action No. 2013-03630 (the "Complaint"), in Middlesex Superior Court. A true and accurate copy of the Complaint is attached as Exhibit A.

2. The Complaint alleges that defendants failed to provide heat and hot water service, for a period in excess of one year, to themselves and other similarly situated tenants in

two apartment buildings located in Cambridge, Massachusetts. The Complaint alleges the following causes of action: (1) violation of G.L. c. 186, § 14; (2) breach of the implied covenant of quiet enjoyment; (3) breach of the implied warranty of habitability; (4) unjust enrichment; and (5) violation of G.L. c. 93A, §§ 2 and 9. Ex. A, ¶¶ 35-73.

3. As stated in the Civil Action Cover Sheet filed simultaneously with the Complaint, plaintiffs sought actual damages of three million dollars ($3,000,000.00). A true and accurate copy of the Civil Action Cover Sheet is attached as Exhibit B.

4. On September 6, 2013, defendants filed a first notice of removal to this Court. *See* Civil Action No. 1:13-cv-12217-RBC, Dkt. No. 1 (the "First Notice of Removal"). In the First Notice of Removal, defendants alleged that all of the elements for removal were met under the Class Action Fairness Act of 2005 ("CAFA"), including the $5,000,000 amount-in-controversy requirement. Specifically, defendants alleged that the $3,000,000 in damages set forth in the Civil Action Cover Sheet, when trebled pursuant to G.L. c. 93A, yields $9,000,000— a figure which clearly exceeds the $5,000,000 jurisdictional threshold set forth by CAFA. First Notice of Removal ¶¶ 13-14.

5. On September 9, 2013, plaintiffs filed a motion for remand to state court. *See* Civil Action No. 1:13-cv-12217-RBC, Dkt. No. 6 (motion), Dkt. No. 7 (memorandum in support). Plaintiffs argued that the case should be remanded because "the amount in controversy in this case does not exceed the sum or value of $5 million, exclusive of interest and costs, as is required by CAFA for removal." *Id*., Dkt. No. 7, at 1.

6. On February 12, 2014, Magistrate Judge Collings granted plaintiffs' motion for remand. *See* Civil Action No. 1:13-cv-12217-RBC, Dkt. No. 22. A true and accurate copy of Judge Collings' remand order is attached as Exhibit C. In the remand order, Judge Collings

found that the plaintiffs' demand in their Civil Action Cover Sheet notwithstanding, actual damages based on the pleadings were more reasonably calculated to be a maximum of $1,823,256, and statutory damages (*i.e.*, "triple rent" damages pursuant to G.L. c. 186, § 14) were more reasonably calculated to be a maximum of $2,355,039.  *Id*. at 14.  Because double recovery is not permissible, Judge Collings found that only the larger of these two sums ($2,355,039) would control, and even with attorneys' fees there would be no way to reach the $5,000,000 threshold.  *Id*. at 15-17.  In sum, Judge Collings concluded that "[b]ecause Equity 'has not demonstrated a reasonable probability that the amount in controversy exceeds $5 million,' the case must be remanded."  *Id*. at 17 (quoting *Amoche v. Guar. Trust Life Ins. Co.*, 556 F.3d 41, 52 (1st Cir. 2009)).

7. Following remand, the parties engaged in fact discovery in the Superior Court.  After the close of discovery, plaintiffs moved for class certification and the Superior Court certified two classes: (1) an "Admitted Outage Class"; and (2) a "Construction Project Class."  *See* June 27, 2017 Memorandum and Order on Plaintiffs' Motion for Class Certification ("Class Certification Order," attached as Exhibit D) at 2-3.

8. The parties are currently engaged in expert discovery, pursuant to a schedule entered by the Superior Court following the Class Certification Order.

9. On May 30, 2018, in keeping with the expert discovery schedule set by the Superior Court, plaintiffs served on defendants two expert reports, including an expert report on damages (the "Damages Report").  A true and accurate copy of the Damages Report is attached as Exhibit E.  This was the first time since the filing of the Complaint that plaintiffs provided any further elaboration of, or specific information about, the damages they were seeking.  The Damages Report opines that "Damages Based on the Implied Warranty of Habitability, Unjust

Enrichment and Chapter 93A Claims" are calculated to be $4,146,882 for the Admitted Outage Class and $3,725,592 for the Construction Project Class, respectively, for a total of $7,872,474. *See* Ex. E, at 1.  The Damages Report further opines that "Damages Based on the Covenant of Quiet Enjoyment Claims" are calculated to be $10,016,586.  Putting aside whether only one of these amounts is recoverable (*e.g.*, the greater of $7,872,474 or $10,016,586), instead of both added together (*e.g.*, $17,889,060), in either case the numbers are well in excess of $5,000,000.

### B.  GROUNDS FOR REMOVAL

10.  28 U.S.C. § 1441(a) establishes when an action commenced in state court is removable, providing in relevant part that:

> any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

11.  This Court's subject matter jurisdiction is grounded upon diversity of citizenship. *See* 28 U.S.C. § 1332(d), as amended by the Class Action Fairness Act of 2005 ("CAFA").

12.  CAFA provides for federal subject matter jurisdiction over any class action in which the aggregate number of putative class members in all proposed plaintiff classes is at least 100, the matter in controversy exceeds the sum or value of $5,000,000, and any member of a class of plaintiffs is a citizen of a different state from any defendant. *Id*. §§ 1332(d)(2) and (5).

**The number of putative class members is at least 100.**

13.  CAFA defines a "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." *Id*. § 1332(d)(1)(B).  CAFA also requires that "the number of members of all proposed plaintiff classes in the aggregate" be 100 or greater. *Id*. § 1332(d)(5)(B).

14. Defendants deny that plaintiffs have properly identified a viable class, or that plaintiffs are necessarily adequate representatives of their putative class. Nevertheless, it is undisputed that there are 116 units at the 205 Walden Street property and 116 units at the 225 Walden Street property, for a total of 232 units. *See* Ex. D, at 4. Thus, based on plaintiffs' allegations and on the Class Certification Order, the number of class members is at minimum 232. *See also id.* at 5 (Superior Court finding that "[t]he numerosity requirement is met"). Indeed, plaintiffs' Damages Report bases its calculations on a list of 1534 tenants. *See* Ex. E, at 2. Thus, CAFA's requirement of 100 class members is readily met.

**The amount in controversy exceeds $5,000,000.**

15. In order to support removal, CAFA requires that the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6).

16. The Damages Report specifies a total of $7,872,474 for "Damages Based on the Implied Warranty of Habitability, Unjust Enrichment and Chapter 93A Claims," and a total of $10,016,586 for "Damages Based on the Covenant of Quiet Enjoyment Claims." *See* Ex. E, at 1. Either of these damages figures is well in excess of the $5,000,000 threshold under CAFA.

17. Defendants deny that plaintiffs will be able to establish their entitlement to any of the damages specified in the Damages Report, or to any other amount. Defendants also deny that plaintiffs will be able to establish their entitlement to multiple damages or attorneys' fees. As the First Circuit has made clear, however, "the pertinent question" for removal purposes "is what is *in controversy* in the case, not how much the plaintiffs are ultimately likely to recover." *Amoche*, 556 F.3d at 51 (emphasis in original).

**Minimal diversity exists.**

18. Under CAFA, minimal diversity exists if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

19. Plaintiffs allege that they reside in Massachusetts. *See* Ex. A, ¶ 6.

20. For diversity purposes, a person is a "citizen" of the state in which s/he is domiciled, and residence is prima facie evidence of domicile.

21. Defendant Equity Residential Management, L.L.C. is a Delaware limited liability company with its principal place of business in Chicago, Illinois. *See* Affidavit of James D. Fiffer (attached as Exhibit F), ¶ 3. Accordingly, for CAFA removal purposes, it is a citizen of the states of Delaware and Illinois. *See* 28 U.S.C. §§ 1332(c), (d)(10).

22. Defendant EQR-Walden Park, L.L.C. is a Delaware limited liability company with its principal place of business in Chicago, Illinois. *See* Ex. F, ¶ 4. Accordingly, for CAFA removal purposes, it is a citizen of the states of Delaware and Illinois. *See* 28 U.S.C. §§ 1332(c), (d)(10).

23. Because at least one plaintiff in this putative class action is a citizen of a state different from at least one defendant, diversity of citizenship exists under 28 U.S.C. § 1332(d)(2)(A).

### C. REMOVAL IS TIMELY AND ALL PROCEDURES FOR REMOVAL HAVE BEEN FOLLOWED

24. 28 U.S.C. § 1446(b)(3) supplies the framework for removal of actions that only become removable based on pleadings or papers served later in the case:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order *or other paper from which it may first be ascertained that the case is one which is or has become removable*.

(Emphasis added.)

25. Consistent with other circuits, the First Circuit's interpretation of "other paper" under 28 U.S.C. § 1446(b)(3) is expansive. *See Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67,

77 (1st Cir. 2014) ("[W]e rely on the clear congressional intent to interpret 'other paper' broadly."). The First Circuit has even permitted "other paper" to encompass an email or other document not formally filed and/or served on the parties, so long as the paper "explicitly specifies the amount of monetary damages sought or sets forth facts from which an amount in controversy in excess of $5 million can be readily ascertained." *Id*. at 76.

26. Here, plaintiffs' Damages Report is exactly the kind of "other paper" contemplated by 28 U.S.C. § 1446(b)(3). It represents the first time in this case, beyond the $3,000,000 generalized demand in the Civil Action Cover Sheet, that plaintiffs have articulated the damages they are seeking. It specifies a total of $7,872,474 for "Damages Based on the Implied Warranty of Habitability, Unjust Enrichment and Chapter 93A Claims," and a total of $10,016,586 for "Damages Based on the Covenant of Quiet Enjoyment Claims." Ex. E, at 1. Thus, the Damages Report "explicitly specifies the amount of monetary damages sought." *Romulus*, 770 F.3d at 76.

27. Under CAFA, there is no time limit from the filing of the complaint as to when a class action may "become removable." *See* 28 U.S.C. § 1453(b) (expressly eliminating, for class actions, the 1-year limitation on removal under § 1446(c)(1)); *see also Amoche*, 556 F.3d at 53 (affirming that "class actions under CAFA are exempt from the removal statute's one-year time limit"). Defendants were served with the Damages Report on May 30, 2018. This Second Notice of Removal has been filed within thirty days of receipt of the Damages Report and thus is timely under 28 U.S.C. § 1446(b)(3).

28. All adverse parties to this action have been provided with written notice of the filing of this removal pursuant to 28 U.S.C. § 1446(d), as evidenced by the attached Certificate of Service.

29.     Also pursuant to 28 U.S.C. § 1446(b), defendants will cause to be filed with the Superior Court Department for Middlesex County a copy of this Second Notice of Removal promptly after filing in this Court.

Respectfully submitted,

EQUITY RESIDENTIAL MANAGEMENT, L.L.C. and EQR-WALDEN PARK, L.L.C.,

By their attorneys,

/s/ Thomas H. Wintner
Thomas H. Wintner (BBO# 667329)
Mathilda S. McGee-Tubb (BBO# 687434)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO PC
One Financial Center
Boston, MA 02111
(617) 348-1625
twintner@mintz.com
msmcgee-tubb@mintz.com

Craig M. White (*Pro Hac Vice To Be Submitted*)
BAKER HOSTETLER LLP
191 N. Wacker Drive, Suite 3100
Chicago, IL 60606-1901
(312) 416-6207
cwhite@bakerlaw.com

Dated: June 5, 2018

-9-

## CERTIFICATE OF SERVICE

    I certify that the above Notice of Removal and all associated papers were filed electronically using the CM/ECF system on June 5, 2018, and that on the same date copies were served on counsel for the plaintiffs by first-class mail.

                                                /s/ Thomas H. Wintner
                                                Thomas H. Wintner