# EXHIBIT A

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss**  **SUPERIOR COURT**
**DEPT. OF THE TRIAL COURT**

RACHELLE BAKER and
JASON DITTMANN, individually and on
behalf of all others similarly situated,

                Plaintiffs,

v.

EQUITY RESIDENTIAL MANAGEMENT,
L.L.C., AND EQR-WALDEN PARK, LLC,

                Defendants.

Civil Action Number:

13-3630

Jury Trial Demanded

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
AUG 15 2013
CLERK

## CLASS ACTION COMPLAINT

### I. INTRODUCTION

1. Plaintiffs Rachelle Baker and Jason Dittmann, individually and on behalf of all others similarly situated, through undersigned counsel, file this Class Action Complaint against their landlord EQR-Walden Park, LLC and Equity Residential Management, L.L.C. (collectively "Equity") for claims arising out Equity's failure to provide heat and hot water service for an extended period of time between April of 2012 and the present.

### II. PARTIES

2. Rachelle Baker is an individual who, at all times relevant hereto, resided at 225 Walden Street, Apartment 1L, Cambridge, Massachusetts.

3. Jason Dittmann is an individual who, at all times relevant hereto, resided at 225 Walden Street, Apartment 1L, Cambridge, Massachusetts.

4. EQR-Walden Park, LLC is a Delaware Corporation with a principal place of

1

business located at 205 Walden Street, Cambridge, Massachusetts.

5. Equity Residential Management, L.L.C. is a Delaware Corporation with a principal place of business located at Two North Riverside Plaza, Chicago, Illinois.

6. Upon information and belief, EQR-Walden Park, LLC is the corporate entity that owns the apartment complex known as "Walden Park," which is located at 205 Walden Street and 225 Walden Street, Cambridge, Massachusetts ("Walden Park" or "Premises").

7. However, EQR-Walden Park, LLC, is not identified anywhere in Baker and Dittmann's lease, in any promotional materials including Equity's webpage,[1] e-mail correspondence from Equity personnel, or elsewhere in documentation provided by Equity to Baker or Dittmann.

8. Plaintiffs Baker and Dittmann, as well as all others similarly situated, are Walden Park residents.

9. According to Baker and Dittmann's lease, Equity Residential Management, L.L.C. is the plaintiffs' lessor.

### III.   VENUE AND JURISDICTION

10. The jurisdiction of this Court is lawful and proper as the damages are well in excess of $25,000.00. *See, e.g.*, G. L. c. 214, § 1; G. L. c. 212, § 3; and G. L. c. 93A, § 9.

11. Venue in Middlesex County is lawful and proper as Baker and Dittmann reside in Middlesex County, EQR-Walden Park, LLC has a principal place of business in Middlesex County, this action involves residential property located in Middlesex County, Equity Residential Management, L.L.C. is the Lessor of at least one rental community in Middlesex County, and Equity's unlawful acts occurred in Middlesex County.

---

[1] http://www.equityapartments.com/massachusetts/boston-apartments/porter-square/walden-park-apartments.aspx

### IV.   FACTUAL BACKGROUND

12.   On November 4, 2011, Equity acquired Walden Park, which includes two large apartment buildings located at 205 and 225 Walden Street, Cambridge, Massachusetts.

13.   Walden Park has approximately 250 apartment units.

14.   When Equity acquired Walden Park, the heating and hot water systems were fully operable and in good working order.

15.   Baker and Dittmann entered into a written lease agreement with Walden Park's previous owner, the Dolben Company, to rent the apartment located at 225 Walden Park, Apt. 1L, Cambridge Massachusetts.[2]

16.   When the Dolben Company owned Walden Park, the plaintiffs had no issues with the heat or hot water system.

17.   After Equity acquired Walden Park, issues with Equity-provided utilities, including heat and hot water, began. Starting in April of 2012, and continuing for well over a year thereafter until the present date, Baker, Dittmann and the Class experienced significant deficiencies and outages with the heat and hot water, including, without limitation, issues on the following dates:

- May 8, 2012
- May 12, 2012
- May 16, 2012
- June 27, 2012
- August 23, 2012
- October 20, 2012
- October 21, 2012
- October 23, 2012
- November 1, 2012
- November 3, 2012
- November 6, 2012
- November 7, 2012

---

[2] When Baker and Dittmann's lease expired, they renewed their lease with Equity.

3

- November 16, 2012
- November 17, 2012
- November 19, 2012
- March 28, 2013
- April 3, 2013
- April 10, 2013
- April 17, 2013
- April 18, 2013
- April 23, 2013
- June 6, 2013
- June 25, 2013
- August 15, 2013 (i.e., today – the day this Complaint was filed)[3].

18. These outages were systemic, and affected all Walden Park units.

19. Over the course of this year, Equity exhibited no urgency in resolving these issues and provided misleading and contradictory reasons for shutting off the utilities.

20. These reasons included, among other stated reasons, conversion from oil to natural gas, a water conservation project, a heating and cooling project, fuel supply/consumption issues, operator error, and automatic shutdowns.

21. The problem was so egregious that the Cambridge Board of Health, which received numerous reports from Walden Park residents, cited Equity for violations of the State Sanitary Code, and deemed the violations to materially impair the health, safety or well-being of the Walden Park's residents. *See* HOUSING INSPECTION REPORT AND ORDER, attached herewith as "Exhibit A," *citing* 105 CODE MASS. REGS., §§ 410.190 and 410.750.

22. On numerous occasions, both Baker and Dittmann (as well as other Walden Park residents) complained to Equity's staff including complaints by telephone, e-mail and in person.

23. These complaints were not resolved, forcing the plaintiffs to pursue formal litigation against Equity.

24. On May 20, 2013, Baker and Dittmann served both defendants with a 30-day

---

[3] Equity notified Baker and Dittmann that heat and hot water system outages would continue for several weeks.

4

Demand Letter pursuant to G. L. c. 93A, § 9.

25. On June 19, 2013, Equity responded with what purported to be an offer of settlement.

26. By letter dated July 23, 2013, Baker and Dittmann accepted the offer made by Equity in its June 19, 2013 correspondence.

27. However, on July 31, 2013, Equity backed out of the deal and refused to honor the terms of the accepted deal, forcing Baker and Dittmann to litigate their claims.

## V. CLASS ALLEGATIONS

28. Baker and Dittmann bring this action on behalf of themselves and all others similarly situated, as a member of the proposed class (the "Class") defined as follows:

> All residents of the Walden Park apartment complex, including 205 Walden Street, Cambridge, Massachusetts and 225 Walden Street, Cambridge, Massachusetts from April 1, 2012 through the present.

29. Excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Equity and any entity in which Equity has a controlling interest or which has a controlling interest in Equity and the legal representatives, assigns and successors of Equity; and (c) Class counsel and members of their families; and (d) all persons who properly execute and file a timely request for exclusion from the Class.

30. *Numerosity*. Baker and Dittmann do not know the number of members in the Class. However, Equity represented that there are approximately 250 apartment units in the Walden Park complex and, with routine turnover common at apartment complexes such as Walden Park, the total Class could approach or exceed four hundred members.[4] The Class is so numerous that the individual joinder of all of members is impractical. Thus, this matter should

---

[4] *See* EQUITY RESIDENTIAL, 2012 ANNUAL REPORT at ¶ 47 (annual apartment turnover in excess of 58%), accessible at http://www.equityapartments.com/corporate/library/pdf/annualreports/annual2012/2012AnnualReport.pdf.

5

be certified as a Class Action to assist in the expeditious litigation of the matter. While the exact number and identities of the Class members are unknown at this time and can only be ascertained through appropriate discovery, Baker and Dittmann believe that all Class members may be ascertained by the records maintained by Equity.

31.  *Commonality.*  Questions of law and fact common to the Class exist as to all members of the Class and predominate over any questions affecting only individual members of the Class. These common legal and factual issues include, without limitation, the following:

a)  whether Equity failed to furnish heat and hot water to Walden Park tenants;

b)  whether Equity's failure to furnish heat and hot water to Walden Park tenants breached the implied covenant of quiet enjoyment;

c)  whether Equity's failure to furnish heat and hot water to Walden Park tenants breached the implied warranty of habitability;

d)  whether Equity's failure to furnish heat and hot water to Walden Park tenants was a violation of G. L. c. 186, § 14;

e)  whether Equity was unjustly enriched by charging rent, while failing to provide heat and water;

f)  whether Equity's conduct was unfair and deceptive in violation of G. L. c. 93A, § 2;

g)  whether Equity's unfair and deceptive conduct was willful and knowing; and

h)  whether members of the Class are entitled to damages, including treble damages, attorneys' fees, costs and interest.

32.  *Typicality.*  Baker and Dittmann's claims are typical of the claims of the members of the Class, as all such claims arise out of Equity's conduct in shutting off or otherwise failing to furnish utilities at the Walden Park property.

33.  *Adequate Representation.*  Baker and Dittmann will fairly and adequately protect the interests of the members of the Class. Baker and Dittmann have retained attorneys experienced in the prosecution of class actions, including consumer protection class actions, and

those involving residential landlords, including Equity.

34.     *Predominance and Superiority.* A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member.[5]

## VI.  CAUSES OF ACTION

### COUNT ONE
### VIOLATIONS OF G. L. C. 186, § 14

35.     Plaintiffs readopt and reallege the preceding paragraphs and incorporates them into this count.

36.     It is unlawful for any lessor of a residential premises to willfully and intentionally fail to furnish heat and/or hot water. *See* G. L. c. 186, § 14.

37.     Equity violated G. L. c. 186, § 14 by willfully and intentionally failing to provide all Walden Park residents, including the plaintiffs, heat and/or hot water service.

38.     This violation occurred intermittently from April 1, 2012 through the present.

39.     At all relevant times, Equity had knowledge that it was not providing heat and/or hot water. Equity's knowledge is evidenced by, among other things, its receipt of complaints

---

[5] Predominance and superiority are not requirements for class certification pursuant to G. L. c. 93A, § 9. However, the plaintiffs can satisfy these elements nonetheless. *See* MASS. R. CIV. P. 23(b).

from residents including Baker and Dittmann, having been cited by the Cambridge Board of Health, and its attempts to apologize to residents both before and after the utilities were shut off.

40. Despite having knowledge of its failure to furnish heat and/or hot water, Equity continued to willfully and intentionally fail to provide these utilities.

41. As a direct and proximate result of Equity's violations of G. L. c. 186, § 14, the plaintiffs suffered significant financial damages, and are entitled to actual and consequential damages or three month's rent (whichever is greater) plus attorneys' fees and costs.

## COUNT TWO
### BREACH OF THE IMPLIED COVENANT OF QUIET ENJOYMENT

42. Plaintiffs readopt and reallege the preceding paragraphs and incorporates them into this count.

43. It is unlawful for any lessor of a residential premises to "directly or indirectly interfere[] with the quiet enjoyment of any residential premises by the occupant." *See* G. L. c. 186, § 14.

44. Equity breached the implied covenant of quiet enjoyment by failing to provide all Walden Park residents, including the plaintiffs, heat and/or hot water service.

45. Equity's breach occurred intermittently from April 1, 2012 through the present.

46. Equity's breach impaired the character and value of the leased premises.

47. At all relevant times, Equity had knowledge that it was not providing heat and/or hot water. Equity's knowledge is evidenced by, among other things, its receipt of complaints from residents including Baker and Dittmann, having been cited by the Cambridge Board of Health, and its attempts to apologize to residents both before and after the utilities were shut off.

48. Despite this knowledge, Equity failed to remedy the problem, and the heat and hot water were shut off intermittently for a period exceeding one year.

49.   As a direct and proximate result of Equity's breach of the covenant of quiet enjoyment, the plaintiffs suffered significant damages, and are entitled to the greater of actual and consequential damages or three month's rent, plus attorneys' fees and costs.

## COUNT THREE
### BREACH OF THE IMPLIED WARRANTY OF HABITABILITY

50.   Plaintiffs readopt and reallege the preceding paragraphs and incorporates them into this count.

51.   Implied in every residential lease there exists an implied warranty of habitability requiring that the premises are fit for human occupation. This means that at the inception of the rental there are no latent or patent defects in facilities vital to the use of the premises for residential purposes and that these essential facilities will remain during the entire term in a condition which makes the property livable.

52.   Equity breached the implied warranty of habitability by failing to furnish heat and/or hot water.

53.   Equity's breach occurred intermittently from April 1, 2012 through the present.

54.   Equity's failure to provide heat and/or hot water was cited by the Cambridge Board of Health as a substantial Sanitary Code violation, deemed to materially impair the health, safety or well-being of Walden Park residents.

55.   It is well settled that a dwelling afflicted with a substantial Sanitary Code violation is unfit for human occupation.

56.   At all relevant times, Equity had knowledge that it was not providing heat and/or hot water. Equity's knowledge is evidenced by, among other things, its receipt of complaints from tenants including Baker and Dittmann, having been cited by the Cambridge Board of Health, and its attempts to apologize to tenants both before and after the utilities were shut off.

57. Despite this knowledge, Equity failed to remedy the problem, and the heat and hot water were shut off intermittently for a period exceeding one year.

58. As a direct and proximate result of Equity's breach of the implied warranty of habitability, the plaintiffs suffered significant financial damages.

## COUNT FOUR
### UNJUST ENRICHMENT

59. Plaintiffs readopt and reallege the preceding paragraphs and incorporates them into this count.

60. Equity has unjustly benefited from collecting rent while failing to provide heat and hot water. Equity voluntarily accepted these benefits.

61. Equity wrongfully retained the benefits conferred by Baker, Dittmann and all members of the Class, and the retention of these benefits would violate fundamental principles of justice, equity and good conscience.

62. As a direct and proximate result, Baker, Dittmann and all members of the Class have suffered damages in an amount to be proven at trial.

## COUNT FIVE
### VIOLATIONS OF THE MASSACHUSETTS CONSUMER PROTECTION ACT, G. L. c. 93A, §§ 2 AND 9

63. Plaintiffs readopt and reallege the preceding paragraphs and incorporates them into this count.

64. At all relevant times, Equity was engaged in commerce for purposes of G. L. c. 93A.

65. On or about May 20, 2013, Baker and Dittmann served Equity with a Demand Letter pursuant to G. L. c. 93A, § 2.

66. On or about June 19, 2013, Equity responded with what purported to be an offer

of settlement. The offer purported to offer each person Equity believed was a member of the class approximately $2,405.00.

67. By letter dated July 23, 2013, Baker and Dittmann accepted this offer.

68. Thereafter Equity backed out of the deal and refused to forward payment to Baker and Dittmann.

69. Equity's gross misuse of the demand/offer procedure of Chapter 93A is, in and of itself, an unfair and deceptive business practice.

70. In addition, all other causes of action stated in this Complaint constitute per se violations of the Massachusetts Consumer Protection Act.

71. These unfair and deceptive business practices resulted in significant financial damage to the plaintiffs.

72. Because Equity had firsthand knowledge that the heat and hot water systems were inoperable for an extended period of time, Equity committed all of these unfair and deceptive business practices willfully and knowingly.

73. Therefore, the plaintiffs are entitled to treble damages, attorneys' fees and costs.

### VII. PRAYER FOR RELIEF

WHEREFORE, the plaintiffs Rachelle Baker and Jason Dittmann, on behalf of themselves and the Class, pray for the following relief:

A. An Order certifying this case as a Class Action pursuant to MASS. R. CIV. P. 23 on behalf of the Class defined herein, appointing Baker and Dittmann as representative of the Class, and appointing their counsel as Class counsel;

B. An award of actual, consequential and statutory damages;

C. Treble damages, costs, interest, and attorneys' fees; and

D. Such further and other relief the Court deems just and appropriate.

## VIII. JURY DEMAND

Baker and Dittmann hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

**LAW OFFICES OF JOSHUA N. GARIK, P.C.**

Joshua N. Garick, Esq. (BBO #674603)
100 Trade Center, Suite G-700
Woburn, Massachusetts 01801
(617) 600-7520
Joshua@GarickLaw.com

**LEONARD LAW OFFICE, LLP**
Preston W. Leonard (BBO # 680991)
139 Charles Street, Suite A121
Boston, MA 02114
(617) 595-3460
pleonard@theleonardlawoffice.com

Dated: August 15, 2013        *Counsel for Plaintiff and the Class*

# EXHIBIT A



# CITY OF CAMBRIDGE

INSPECTIONAL SERVICES DEPARTMENT
831 MASSACHUSETTS AVENUE, CAMBRIDGE, MASSACHUSETTS 02139
PHONE (617) 349-6100, FAX (617) 349-6132; TDD/TTY (617) 349-6112

**Ranjit Singanayagam**
Commissoner

## HOUSING INSPECTION REPORT AND ORDER

**ADDRESS OF PREMISES:** 205    Walden St
Number    Street    Apartment Number

**OCCUPANT:** _____ **TELEPHONE:** _____
Last Name    First    Middle I.

**OWNER:** Residential Equity    **TELEPHONE:** _____
Last Name    First    Middle I.

**OWNER ADDRESS:** P.O BOX 87407    Chicago
Number    Street    City

**CODE CASE NUMBER:** HOU-000740-2013    **DATE:** 04/22/2013
**DATE OF INSPECTION:** MO. April    DAY 22nd    **HOUR** 04:23 PM

**NOTE:** Any party effected by this order has a right to a hearing by the Inspectional Services Department in accordance with Section 410.850 of the State Sanitary Code. You have the right to inspect all available information and to be present or be represented at a hearing. A hearing must be requested within 7 days of this order.

**ROOM(S) / VIOLATIONS OF STATE SANITARY CODE**    **REGULATION 105 CMR 410.**

410.190 Hot Water Restore hot water/ heat

410.750 Cond. Deemed to Endgr. or Impair Health or Safety Restore heat and hot water.

One or more of the violations cited above is a condition which may materially impair the health, safety or well-being of the occupant(s) as determined ty Regulation 410.750 of the State Sanitary Code or the Authorized inspector.

___ is hereby ordered to remedy the above cited violation within __2__ days or face prosecution by the City of Cambridge. These violations may permit the occupant to exercise one or more statutory remedies.

RECEIPT OF THIS INSPECTION REPORT IS NOTICE AS REQUIRED BY MASSACHUSETTS GENERAL LAWS CHAPTER 239 SECTION 8A.

_____
Signature of Occupant

**SIGNED UNDER PAINS AND PENALTIES OF PERJURY:**

**APPROXIMATE DATE & TIME OF REINSPECTION** _____

**INSPECTOR** _[signature]_

**CERTIFIED TRUE COPY**
I THIS DAY DELIVERED A TRUE COPY
IN HAND TO _____ ON _____ TIME _____
_____ CONSTABLE OF CITY OF CAMBRIDGE

This is an important legal document. It may effect your rights. You should have it translated