# EXHIBIT C

# United States District Court
# District of Massachusetts

RACHELLE BAKER, ETC.,
JASON DITTMANN, ETC.,
    Plaintiffs,

        v.                                   CIVIL ACTION NO. 13-12217-RBC[1]

EQUITY RESIDENTIAL MANAGEMENT, L.L.C.,
EQR-WALDEN PARK, LLC,
    Defendants.

## MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR REMAND TO STATE COURT (#6)

COLLINGS, U.S.M.J.

### I. Introduction

Putative class representatives Rachelle Baker and Jason Dittmann ("Plaintiffs") filed a class action against Equity Residential Management, L.L.C. and EQR-Walden Park, L.L.C. (collectively "Equity") for claims arising out of

---

[1] With the parties' consent, this case has been assigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#11)

Equity's failure to provide heat and hot water service for two apartment buildings (collectively "Walden Park") at sporadic intervals on about twenty-four occasions between April 2012 and the present. These outages lasted anywhere from one to twenty-four hours at a time.

Ms. Baker and Mr. Dittmann are residents of one of the two Walden Park buildings, 225 Walden Street, Apartment 1L, Cambridge, Massachusetts. They seek to represent a putative class of similarly situated individuals living at Walden Park for a period during which the outages occurred. Equity Residential Management, L.L.C. is the plaintiffs' lessor and is a Delaware corporation with a principle place of business located in Chicago, Illinois. EQR-Walden Park, L.L.C. owns the apartment complex and is a Delaware corporation with a principle place of business in Chicago, Illinois.[2] Plaintiffs Baker and Dittmann filed this class action in the Massachusetts Superior Court of Middlesex County on August 15, 2013 pursuant to Mass. R. Civ. P. 23. Equity filed a Notice of Removal from State Court under 28 U.S.C. §§ 1332, 1441, 1446, and 1453 claiming federal subject matter jurisdiction on the basis of diversity of

---

[2] The Complaint alleges that EQR-Walden Park, L.L.C. has a principle place of business in Cambridge, Massachusetts. *See* #1-1 at pp. 1-2. If that were true, there would be no diversity jurisdiction. However, in the Answer, Etc., it is averred that EQR-Walden Park L.L.C. has a principle place of business in Chicago, Illinois. *See* #1-3 at p. 2. Evidently, the plaintiffs accept this assertion since they advance no argument that there is not complete diversity in this case.

citizenship and satisfaction of the other elements under the Class Action Fairness Act of 2005 ("CAFA"). Plaintiffs filed a Motion for Remand, disputing satisfaction of the amount in controversy under § 1332(d)(2).

## II. Applicable Law

CAFA provides for the removal to federal court of class actions filed in state court if they satisfy the statute's minimal diversity and class size requirements and have more than $5 million in controversy, exclusive of interests and costs. *See* 28 U.S.C §§ 1332(d), 1441(b), 1446(c), 1453; *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 42-43 (1st Cir. 2009). The only CAFA requirement at issue in this case is whether or not the amount in controversy exceeds the jurisdictional threshold.

"[D]etermining whether a case belongs in federal court should be done quickly, without an extensive fact-finding inquiry." *Spielman v. Genzyme Corp.*, 251 F.3d 1, 4 (1st Cir. 2001). There is a "general rule of deference to the plaintiff's chosen forum." *Amoche*, 556 F.3d at 50 (citing 14C Wright, Miller & Cooper, *Federal Practice and Procedure* § 3725, at 95 (3d ed. 1998)) (recognizing that "a greater burden [is imposed] on defendants in the removal situation than is imposed on plaintiffs who wish to litigate in federal court by

invoking its original jurisdiction" to demonstrate the amount in controversy but that "[t]his discrepancy in treatment of plaintiffs and defendants may be justified by the historical tradition that the plaintiff is the master of the forum and is empowered to choose the court system and venue in which litigation will proceed"). Thus, any doubts in the evidence should be resolved in favor of remand because the court has "a responsibility to police the border of federal jurisdiction." *Spielman*, 251 F.3d at 4.

Law in the First Circuit, along with seven other circuits, places the burden of showing federal jurisdiction on the defendant removing under CAFA. *Amoche*, 556 F.3d at 48-49; *accord Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008) ("The removing party [under CAFA], as the proponent of federal jurisdiction, bears the burden of describing how the controversy exceeds $5 million."); *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008); *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404-05 (6th Cir. 2007); *Morgan v. Gay*, 471 F.3d 469, 473 (3d Cir. 2006); *DiTolla v. Doral Dental IPA of New York*, 469 F.3d 271, 275 (2d Cir. 2006); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1329-30 (11th Cir. 2006); *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 685-86 (9th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427

F.3d 446, 447 (7th Cir. 2005).

Where the complaint does not contain specific damage allegations, the removing defendant must show there is a reasonable probability that the amount in controversy exceeds the $5 million threshold *at the time of removal.* *Amoche,* 556 F.3d at 43, 51; *see also Blockbuster, Inc. v. Galeno,* 472 F.3d 53, 58 (2d Cir. 2006) ("[The removing defendant] must show that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million."); *Brill,* 427 F.3d at 449 ("[T]he removing litigant must show a reasonable probability that the stakes exceed the [jurisdictional] minimum."). "When a plaintiff's complaint fails to specify damages, or specifies damages less than the federal jurisdictional amount, the courts have disagreed as to the burden that a defendant must meet to establish the jurisdictional sufficiency of the amount in controversy for removal purposes." 14C Wright, Miller & Cooper, *Federal Practice & Procedure* § 3725.1, at 76 (4th ed. 2009). Where the complaint filed in state court alleges a specific damage amount that is less than the federal jurisdictional minimum, many circuits place a heavier burden—showing to a legal certainty that the amount in controversy exceeds the jurisdictional threshold—on the defendant than if the complaint did not

claim a specific amount. *See* 14AA Wright, Miller & Cooper, *Federal Practice & Procedure* § 3702.2, at 395-96 (4th ed. 2011). This heavier burden reflects "the respect accorded the plaintiff's forum choice and the strict construction accorded the removal statute, which effectively amounts to a presumption against the amount in controversy requirement being satisfied and therefore a presumption against removal." *Id.* (footnote omitted). In that situation, the defendant's notice of removal does not meet the legal certainty burden that the presumption creates if it is merely conclusory assertions. *Id.* at 396. This heavier burden is much like that imposed on a defendant seeking dismissal for want of federal subject matter jurisdiction by challenging a plaintiff's claim for damages allegedly in excess of the jurisdictional minimum. *Id.* ("In many respects the burden the Eleventh Circuit established—showing to a legal certainty that the monetary value of the controversy does exceed the jurisdictional amount—is parallel to the burden applied in original federal court actions."). *Compare St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938) ("[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." (footnotes omitted)), *with Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095-96 (11th Cir.

6

1994) ("[D]efendant must prove to a legal certainty that plaintiff's claim must exceed [the jurisdictional minimum]. This strict standard is consistent with case law and [C]ongress' policy of limiting federal diversity jurisdiction." (footnote omitted)), *and Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (recognizing three different burdens of proof placed on a removing defendant and, in the CAFA context, "when a state-court complaint affirmatively alleges that the amount in controversy is less than the jurisdictional threshold, the party seeking removal must prove with legal certainty that CAFA's jurisdictional amount is met" (internal citation, quotation marks and footnote omitted)).

The *Amoche* court, in holding that the removing defendant must show to a reasonable probability that the amount in controversy exceeds $5 million where the complaint does not contain specific damage allegations, found the reasonable probability standard to be substantively the same as the preponderance of the evidence standard adopted in several circuits. *See Amoche*, 556 F.3d at 50. Because a preponderance of the evidence standard is less burdensome than legal certainty and reasonable probability is substantively the same as preponderance of the evidence, the reasonable probability standard applied in *Amoche* is less burdensome than the legal certainty standard applied

7

in other circuits. *See id.*; 14AA Wright, Miller & Cooper, *Federal Practice & Procedure* § 3702.2, at 396-400 (4th ed. 2011).

In the instant case, the defendants removed from state court pursuant to 28 U.S.C. §§ 1332(d), 1441(b), 1446(c), and 1453, claiming that the amount in controversy exceeds $5 million. The complaint itself does not contain a specific damage amount, but the civil case cover sheet attached to the complaint does claim $3 million in damages. If the civil case cover sheet is *not* considered in conjunction with the complaint for the purpose of determining whether a specific damages amount is alleged, then *Amoche* controls and the burden on the defendants in this case is proving to a reasonable probability that the amount in controversy exceeds $5 million. *See Amoche*, 556 F.3d at 50. The First Circuit has not spoken on whether or not the civil cover sheet may be considered, but there is an opinion in this District which holds that it can be. *Williams v. Litton Loan Servicing*, 2011 WL 3585528, at *6 (D. Mass. Aug.15, 2011) ("[C]ivil action cover sheets may be considered in determining the amount in controversy." (citation omitted)) If the civil case cover sheet may be considered for the purpose of determining whether a specific damages amount is alleged, then the burden placed on the removing defendant is unclear under *Amoche* as that opinion explicitly left unresolved the question of what the

8

burden is when a specific damage amount is alleged. *Id.* at 49 n. 2.

Although the issue was left open, the *Amoche* court did note that it saw no reason to apply a higher standard than is appropriate for a case where specific damages are not alleged. *Id.* at 49 n.2. Because there appears to be an open question as to the precise standard applicable to this case, assuming that the specific amount of damages alleged in the civil case cover sheet attached to the complaint is effectively the same as if alleged in the complaint, the Court must decide whether to follow the dictum in *Amoche* suggesting a reasonable probability standard or adopt the approach of other circuits and impose a standard higher than reasonable probability.  However, as discussed *infra*, because the defendants failed to prove that the amount in controversy exceeds $5 million—even to a reasonable probability—the decision to remand need not rest on the resolution of this issue.

### III. Discussion

To meet the standard of a reasonable probability that the amount in controversy meets $5 million *at the time of removal*, the defendants must allege facts with sufficient particularity to demonstrate that the amount in controversy exceeds the jurisdictional minimum. *See Amoche,* 556 F.3d at 51; *see also Dep't of Recreation and Sports v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991);

*see also Barrett v. Lombardi*, 239 F.3d 23, 30-31 (1st Cir. 2001). Here, the Defendants' Notice of Removal and Opposition to Plaintiff's Motion for Remand fail to allege *any* facts that would bring the amount in controversy above $5 million. The only information upon which the defendants base their notice and opposition is the facts alleged in the complaint and a blanket trebling of damages claimed in the civil case cover sheet.

 The complaint seeks actual, consequential, and statutory damages; treble damages, costs, interests and attorneys' fees; and further appropriate relief. Based on the type of relief being sought and without specificity in the complaint as to the type of damages the $3 million figure represents, the defendants argue that the $3 million figure claimed by the plaintiffs is subject to trebling under Mass. Gen. L. c. 93A § 9(3), bringing the amount in controversy to $9 million. However, alleging a blanket trebling of damages, without more, fails to meet the defendants' burden of proving—even to a reasonable probability—that the amount in controversy exceeds $5 million.

 Where a tenant seeks relief for damages arising from the same facts under concurrent violations of Mass. Gen. L. c. 186 § 14 and c. 93A, the "triple rent" clause of c. 186 § 14 does not serve its function as "'an incentive to the pursuit of relief where the actual and consequential damages are slight or are difficult

10

to prove.'" *Wolfberg v. Hunter*, 385 Mass. 390, 400, 432 N.E.2d 467, 474 (1982) (quoting *Darmetko v. Boston Hous. Auth.*, 378 Mass. 758, 762, 393 N.E.2d 395, 398 (1979)). Thus, a tenant proceeding under both Mass. Gen. L. c. 186 § 14 and c. 93A "may collect only one such award, covering all claims that the tenant has raised or reasonably could have raised in the suit." *Simon v. Solomon,* 385 Mass. 91, 110-11, 431 N.E.2d 556, 569 (1982). Thus, plaintiffs in this case may only recover under one of these two theories because their claims arise out of the same set of facts and circumstances. *See id.*

### A. Damages

*1. Counts One, Two, and Three:
Violation of Mass. Gen. L. c. 186 § 14*

Count One alleges violation of Mass. Gen. L. c. 186 § 14, which codifies the Implied Covenant of Quiet Enjoyment (Count Two). *See, e.g., Wiesman v. Hill*, 629 F. Supp.2d 106, 114 (D. Mass. 2009). This section also, in effect, codifies the Implied Warranty of Habitability (Count Three) because recovery under both of these theories for the same violations is not permitted. *See, e.g., Darmetko,* 378 Mass. at 761, 393 N.E.2d at 398. Because the damages for breaches of the covenant of quiet enjoyment and the warranty of habitability

11

are very similar,[3] the allegations for each breach arise from the same set of circumstances, and there is no statute authorizing cumulative recovery, plaintiffs are not entitled to recover under both theories. *See id.* Thus, Mass. Gen. L. c. 186 § 14 sets out the damages to which the plaintiffs are entitled under breaches of these implied duties as "actual and consequential damages *or* three months' rent, whichever is greater, and the costs of the action, including a reasonable attorney's fee."

Based on the figures provided in the Defendants' Notice of Removal from State Court and the Plaintiffs' Motion for Remand to State Court, there are 367[4] affected units with an average rent of $2,139.00/month. Three months of rent for the affected class would be a total of $2,355,039. In the alternative, actual damages are calculated as the difference in the value of the property in its damaged condition from the value of the property free of these damages (i.e.,

---

[3] Damages for breach of the covenant of quiet enjoyment where the tenant remains in possession of the premises are measured by the difference between the value of what the lessee should have received and the value of what he did receive. *Charles E. Burt, Inc. v. Seven Grand Corp.*, 340 Mass. 124, 130, 163 N.E.2d 4 (1959). Damages for breach of the implied warranty of habitability are measured by 'the difference between the value of the dwelling as warranted (the rent agreed on may be evidence of this value) and the value of the dwelling as it exists in its defective condition.' *Boston Hous. Auth. v. Hemingway*, 363 Mass. 184, 203 (1973). These remedies are 'quite similar.'

*Darmetko*, 379 Mass. at 761 n. 4, 393 N.E.2d at 398 n. 4.

[4] 232 units with a 58% turnover rate during the class period claimed yields 367 affected units.

12

monthly rent). *See, e.g.*, *Dorgan v. Loukas*, 19 Mass. App. Ct. 959, 960, 473 N.E.2d 1151, 1153 (Mass. App. Ct. 1985). Because the heat and hot water were out for varying periods for a total of twenty-four days and the average daily rent is $69.00, actual damages would be $607,752.[5] Neither party has pled consequential damages. Because three months' rent is greater than the actual plus consequential damages, defendants would be liable for $2,355,039 under Mass. Gen. L. c. 186 § 14.

## 2. Damages under Count Four

Count Four of the complaint alleges that the defendants were unjustly enriched by committing the acts alleged in Counts One, Two, Three, and Five. "Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Santagate v. Tower,* 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) (quoting *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.,* 534 F. Supp. 340, 347 (D. Mass. 1982) (further citation omitted)). As an equitable remedy and not a separate cause of action, unjust enrichment would not change the amount recoverable when the remedy at law would be

---

[5] $69/day multiplied by 367 affected units multiplied by 24 days is $607,752.

13

adequate. *See Bisbano v. Strine Painting Co.*, 737 F.3d 104, 108 (1st Cir. 2013); *Smith v. Jenkins*, 718 F. Supp.2d 155, 172 (D. Mass. 2010).

### 3. Damages Under Count Five

Count Five alleges violations of the Massachusetts Consumer Protection Act, Mass. Gen. L. c. 93A §§ 2 & 9. Section 9(3) entitles plaintiffs to treble actual damages if the court finds that the defendants willfully and knowingly violated § 2. Treble actual damages would be $1,823,256.[6]

### B. Computing the Amount in Controversy

The plaintiffs seek treble damages under Mass. Gen. L. c. 93A § 9(3), which may be included in the jurisdictional minimum calculation. *Youtsey v. Avibank Mfr., Inc.*, 734 F. Supp.2d 230, 238 (D. Mass. 2010). Treble actual damages under this section would be $1,823,256. Alternatively, the plaintiffs seek damages under Mass. Gen. L. c. 186 § 14, which would be three months' rent, or $2,355,039, because three months' rent is more than actual damages. However, because the claims under c. 186 § 14 and c. 93A § 9 arise out of the same set of circumstances, plaintiffs would be entitled to the greater of the two awards, which is less than the jurisdictional minimum of $5 million.

---

[6] $607,752 actual damages times three is $1,823,256.

14

Case 1:13-cv-12217-RBC Document 22 Filed 02/12/14 Page 15 of 19

Normally, attorney's fees are not included in determining the amount in controversy because "the successful party does not collect his attorney's fees in addition to or as part of the judgment." *Velez v. Crown Life Ins. Co.,* 599 F.2d 471, 474 (1st Cir. 1979) (citing 1 *Moore's Federal Practice* 0.99(2)). There are two exceptions to this general rule: (1) when the fees are provided for by contract, and (2) when a statute mandates or allows payment of the fees. *Id.* (citations and footnote omitted). The second exception applies here as both Mass. Gen. L. c. 186 § 14 and c. 93A § 9(4) allow plaintiffs to collect attorney's fees.

In *Spielman*, the First Circuit rejected the plaintiff's claim that attorney fees under Mass. Gen. L. c. 93A § 9(4) should be aggregated for the putative class in order to reach the amount in controversy requirement for an individual claim. 251 F.3d at 10. However, in that case the plaintiff wished to aggregate anticipated attorney's fees—attributable to the entire class—in order to meet the jurisdictional minimum for an *individual* plaintiff, not the minimum for a class action. *See id.* This decision also predates the CAFA of 2005. Thus, such a prohibition would likely not be applicable to this case where the amount in controversy threshold must be satisfied by the putative class and not the named individual plaintiffs.

In *Youtsey*, the parties conceded that attorney's fees mandated under Mass. Gen. L. c. 149 § 150 should be considered for the purpose of meeting the amount in controversy requirement. 734 F. Supp.2d at 238. Though the plaintiff alleged that attorney's fees would not amount to enough such that the amount in controversy requirement would be met, the court recognized that the burden was on the defendant. *Id*. at 238-39; *accord Spielman,* 251 F.3d at 5 (satisfying burden involves "alleging with sufficient particularity facts . . ."); *Dep't of Recreation & Sports,* 942 F.2d at 88 (same). Still, the court noted, the defendant in that case "offered nothing more than its *own* naked speculation that Plaintiff's fees could possibly be high enough to raise his recovery to over [the jurisdictional minimum]." *Youtsey*, 734 F. Supp.2d at 238 (emphasis in original). Because the burden in *Youtsey* was on the defendant and not the plaintiff, the court found such speculation by the defendant to be insufficient. *Id.* at 238-39; *accord Amoche,* 556 F.3d at 50 ("[A]s the proponent of federal jurisdiction, [the defendant] must *sufficiently demonstrate* that the amount in controversy exceeds [the] jurisdictional minimum." (emphasis added)); *Cf. Raymond v. Lane Const. Corp.,* 527 F. Supp.2d 156, 164 (D. Me. 2007) (holding that defendant bore its burden because "even one extra dollar of attorney's fees would place [the plaintiff] over the [jurisdictional] threshold").

16

Here, even if attorney's fees are considered in order to meet the amount in controversy requirement, these fees would need to exceed $2.5 million in order to reach the jurisdictional minimum. Further, the defendants, upon whom the burden rests, have not alleged any facts—let alone facts "with sufficient particularity"—to justify speculation that an award of attorney's fees would bring the amount in controversy over the jurisdictional threshold amount of $5 million. *See Amoche,* 556 F.3d at 50; *Spielman,* 251 F.3d at 5. The defendants fail to meet their burden to show sufficiently that attorney's fees plus damages would exceed $5 million. Because Equity "has not demonstrated a reasonable probability that the amount in controversy exceeds $5 million," the case must be remanded. *See Amoche,* 556 F.3d at 52.

### IV. Conclusion and Order

For all the reasons stated, it is ORDERED that Plaintiffs' Motion for Remand to State Court (#6) be, and the same hereby is, ALLOWED. It is FURTHER ORDERED that judgment enter remanding the case to the state court.

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

February 12, 2014.

17

18