# EXHIBIT D

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**  **SUPERIOR COURT**
**CIVIL ACTION**
**No. 13-3630**

### RACHELLE BAKER, JASON DITTMAN,
and all others similarly situated

vs.

### EQUITY RESIDENTIAL MANAGEMENT, L.L.C.
and EQR-WALDEN PARK, LLC

\*\*\*\*

### MEMORANDUM AND ORDER ON
### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

For the following reasons, the plaintiffs' Motion for Class Certification is ALLOWED.

### BACKGROUND

Beginning on April 1, 2011 the named plaintiffs were tenants in Walden Park, a residential apartment complex at 205 and 225 Walden Street, Cambridge. The defendants' unit is Apartment 1L in 225 Walden Street. They have renewed their one-year leases in the same apartment at least through March 31, 2016; from recent filings, it appears they may have moved elsewhere. They have never occupied a unit in the other building at 205 Walden Street.

Defendant EQR-Walden Park, LLC ("EQR") is the owner of Walden Park, having acquired it on October 25, 2011. It appears that Equity Residential Management, L.L.C. ("Equity") manages Walden Park for EQR, though the plaintiffs maintain that this has not been proven. The parties have not come to an agreement on how old the buildings and their systems are, but it seems clear enough that they predate the plaintiffs' tenancy and EQR's acquisition by some number of decades (the defendants suggesting 50 years).

Beginning in 2012, the defendants began the first of three construction projects to upgrade the heating and hot water systems.

**The Conversion Project:** The first was to replace oil-fueled boilers with boilers fueled by natural gas. The defendants put forward its initial proposal in or about April 2012. The plan was to get the work done in the summer season, shutting down the boilers (and thus curtailing hot water service) as needed, so as to be ready for the heating season. Getting the necessary approvals from the City and doing the actual work, however, took from until about May 2013. The work itself necessarily caused temporary interruptions of the heating and hot water systems.

**The Heating System Modification Project:** During the boiler replacements, the defendants discovered other problems with the systems as a whole. Clogs in the fuel lines in had caused automatic shutdowns, which the defendants attempted to address with contractors and auxiliary fuel tanks, apparently with uneven success.

**The Riser Replacement Project:** In the summer of 2014, the defendants undertook to fix leaks in the heating system by replacing the risers (vertical piping). This required shutting down the temporarily dormant heating system and, perhaps on occasion, the domestic hot water system, which had different piping but depended on the same boilers.

The plaintiffs have identified 27 dates between April 23, 2012 and March 30, 2014 on which the defendants have acknowledged that there were heat and/or hot water outages in both buildings (205 and 225 Walden Street), and an additional 19 dates when there were outages only in 225 Walden Street. They seek certification of two classes:

- The "Conversion Class," consisting of all persons who were tenants occupying either building during the Conversion Project (May 1, 2012 through May 30, 2013), the

Heating System Modification Project (July 1, 2013 through December 31, 2013), and/or the Riser Replacement Project (July 7, 2014 through September 30, 2014); and

- The "Admitted Outage Class," consisting of all persons who were tenants in either building on any of the 27 dates for which the defendants have admitted outages, and all persons who were tenants in 225 Walden Street on any of the 19 dates for which the defendants have admitted outages in that building only.

## DISCUSSION

### A. The Counts.

The Complaint was originally in five counts:

1. Violations of G.L. c. 186, §14;

2. Breach of the Implied Covenant of Quiet Enjoyment;

3. Breach of the Implied Warranty of Habitability;

4. Unjust Enrichment; and

5. Violation of G.L. c. 93A, §§2 and 9.

Count 1 went the way of a motion for partial summary judgment, but the rest remain in play.

### B. Certification Under Rule 23.

The requirements for certification of a class in this Court are found in Mass. R. Civ. P. 23(a) and (b):

> (a) **Prerequisites to Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the

> claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Thus, the familiar checklist – numerosity, commonality, typicality, adequacy, predominance, and superiority – which the Massachusetts rule shares with its federal counterpart, Fed. R. Civ. P. 23(a) and (b)(3).[1]

A motion for class certification should not turn on the court's evaluation of the merits of the parties' legal or factual claims. The court may find it necessary, however – as I have – to analyze the parties' substantive claims and review such facts as are available at this preliminary stage, in order to evaluate whether the requirements of Rule 23 have been satisfied. In re Ford Motor Co. Ignition Switch Prod. Liab. Litig. 174 F.R.D. 332, 339 (D.N.J. 1997).

Walden Park consists of 231 apartment units, 116 of which are in the 225 Walden Street building. Although the record does not reveal how may units were occupied at a given time (which might reduce these numbers somewhat), it is highly likely that a substantial number of apartments had two or more occupants, and that some changed tenancies over the 23 month period in question,

---

[1] There are also differences between the state and federal rules. Among these are the unavailability, under the state rule, of the "limited-issue class" actions expressly authorized by the terms of Fed. R. Civ. P. 23(c)(4)(A) but not Mass. R. Civ. P. 23, see Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 602 (1985), and of the "opt-out" procedure of Fed. R. Civ. P. 23(c)(2)(B)(v).

suggesting that in all likelihood, the number of class members substantially exceeds the number of apartments. The numerosity requirement is met.

The commonality requirement dictates that plaintiffs seeking class certification must demonstrate that "all the persons whom they profess to represent have a common interest in the subject matter of the suit and a right and interest to ask for the same relief." Spear v. H.V. Greene Co., 246 Mass 259, 266 (1923). The commonality test is "qualitative rather than quantitative, that is, there need only be a single issue common to all members of the class." In re American Medical Systems, Inc., 75 F.3d 1069, 1080 (6th Cir. 1996) *quoting* 1 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS, §3.10 at 3-50 (3rd ed. 1992).

The evidence brought forward meets the commonality, requirement. As noted above, there were 29 outages affecting the entire Waldon Park complex and an additional 19 outages affecting only the 225 Waldon Street building. Apart from the likelihood that some tenants moved out and others moved in during the relevant 23-month timeframe (which should be readily ascertainable from the defendants' records), it should be relatively simple to tally the class members who were without heat, hot water, or both, on each of the 48 dates.

The typicality and adequacy requirements are also met. The named plaintiffs are typical of the occupants in the 225 building and, in significant part, of the occupants of Walden park as a whole. They are, to all appearances, able and willing to represent their fellow tenants. That they lived in the 205 building – never in 225 – does not prevent them from representing the interests of the 225 tenants and presenting evidence in their behalf, and their attorneys have done a fine job so far.

The predominance and superiority requirements present an arguably closer call. The defendants point out that not all tenants necessarily suffered identical impacts from a given interruption of their heat or hot water. Some (including the plaintiffs) worked at times from home, while others were away during working hours; some had young children or pets that might have reacted poorly to the cold, while others didn't; the named plaintiffs kept a diary of the temperatures in their apartment during outages while others likely did not, and so forth.

There are cases in which the injuries to class members are sufficiently individual, dissimilar, and complex that the assessment of damages, one by one, predominates over issues of culpability and causation common to all. For example,

> "[a] 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple law-suits separately tried."

Fletcher v. Cape Cod Gas Co., 394 Mass. 595, 604 n.8 (1985), quoting the Advisory Committee Notes to the 1966 Revision of Fed. R. Civ. P. 23(b)(3); see also Aspinall v. Philip Morris Companies, Inc., 442 Mass. 381, 399 n.19 (2004) (in product liability action for personal injuries, "unique and different experiences of each individual member of the class would require litigation of substantially separate issues and would defeat the commonality of interests in the certified class").

This, however, is not such a case; at least, it does not appear so at this juncture. "Class certification may be appropriate where common issues of law and fact are shown to form the nucleus of a liability claim, even though the appropriateness of class action treatment in the damages phase is an open question." Salvas v. Wal-Mart Stores, Inc., 452 Mass. 337, 364 (2007). So far at least,

there is no allegation that any tenant (of for that matter, their pets) suffered physical injury as a result of the shut-offs of heat and hot water. Without meaning to demean the inconvenience, discomfort, and frustration inherent in even a temporary loss of these most basic of life's comforts, the injury to the tenants hardly equates to the hypothetical "mass accident," whether considered in dollars or in diversity of harm. In such a case, the fact that "'[t]he amount of damages is invariably an individual question ... does not defeat class action treatment.'" Id. (citation omitted).

In short: the requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority are all satisfied in this case.

**C.     Certification Under Chapter 93A, §9.**

"Where appropriate, 'the public policy of the Commonwealth strongly favors G.L. c. 93A class actions.'" Bellermann v. Fitchburg Gas and Elec. Light Co., 470 Mass. 43, 52 (2014), quoting from Feeney v. Dell Inc., 454 Mass. 192, 200 (2009). .

> In considering certification under G.L. c. 93A, a judge must bear in mind the "'pressing need for an effective private remedy' ... and that 'traditional technicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice.'"

Bellerman at 52-53, quoting from Aspinall, 442 Mass. at 391-392 and Fletcher, 394 Mass. at 605–606.

The statutory language governing class certification in a Chapter 93A action is somewhat less stringent than that of Rule 23. Aspinall, 442 Mass. at 391-92; Kwaak v. Pfizer, Inc., 71 Mass. App. Ct. 293, 302 (2008). Section 9(2) of the statute allows a consumer injured by an unfair or deceptive act or practice to bring a class action, where

> the use or employment of the unfair or deceptive act or practice has caused similar injury to numerous other persons similarly situated and

-7-

if the court finds in a preliminary hearing that [the consumer] adequately and fairly represents such other persons.

Section 9(2) thus expressly incorporates numerosity and adequacy requirements that parallel those of Rule 23. Caselaw has implied as well the requirements of commonality and typicality, but has eschewed importing the "highly discretionary element[s]" of predominance and superiority. Baldassari v. Public Fin. Trust, 369 Mass. 33, 40 (1975); *accord*, Fletcher, 394 Mass. at 605This case meets the class certification requirements of Chapter 93A as well as those of Rule 23.

### ORDER

For the foregoing reasons, the plaintiffs' Motion for Class Certification is ALLOWED.

The case is in need of a revised tracking order. On or before July 17, 2017 counsel for the plaintiffs shall file a joint motion for extension of the tracking order or, if the parties are unable to agree, a motion for each side. The B session will not have a judge in the third quarter, but I will act on the motion.

Counsel for both sides shall report for a status conference on September 13, 2017 (or such other date as is mutually convenient) at 2:00 p.m., prepared to report on each side's view of the path toward resolution.

                                                                Thomas P. Billings
                                                                Justice of the Superior Court

Dated: June 27, 2017